IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

ANTHONY D.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil No. 24-11121 (RMB)

OPINION

**APPEARANCES:**

Jamie Ryan Hall, Esq.
LAW OFFICE OF JAMIE R. HALL
300 North Pottstown Pike, Suite 240
Exton, Pennsylvania 19341

    *Counsel for Plaintiff*

Catherine Elisabeth Hamilton, Esq.
Shawn Cheree Carver, Esq.
SOCIAL SECURITY ADMINISTRATION
Office of Program Litigation, Office 3
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235

    *Counsel for Defendant*

---

[1] Due to the significant amount of personal information and privacy concerns in Social Security cases, non-governmental parties are identified solely by first name and last initial. *See* D.N.J. Standing Order 2021-10.

**RENÉE MARIE BUMB, Chief United States District Judge**:

This matter comes before the Court upon an appeal filed by Plaintiff Anthony D. ("Plaintiff") seeking judicial review of a final determination of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for Social Security Disability benefits. For the reasons set forth below, the Court shall **VACATE** the decision of the Administrative Law Judge (the "ALJ") and **REMAND** for proceedings consistent with this Opinion's reasoning.

I.     PROCEDURAL HISTORY

On September 8, 2020, Plaintiff filed an application for Social Security Disability benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning May 1, 2018. Plaintiff's date last insured was December 31, 2020. His claims were first denied on May 3, 2021, and again denied upon reconsideration on December 6, 2021. [Administrative Record ("R.") at 92–93, 108 (Docket No. 6).] Thereafter, Plaintiff filed a written request for a hearing before an ALJ. That hearing took place telephonically due to the COVID-19 Pandemic on April 5, 2022, before ALJ Eric Eklund. [R. at 60–89.] Plaintiff was represented by his attorney and provided testimony at that hearing. [R. at 63–81.] Kathleen Spencer, an impartial vocational expert appeared and provided testimony. [R. at 81–88.] The ALJ issued his decision on May 18, 2022, finding that Plaintiff was not disabled under the Act. [R. at 114–32.] On June 6, 2023, the Appeals Council vacated the ALJ's decision and remanded for a new hearing from an ALJ. [R. at 133–38.]

A hearing before ALJ Elizabeth Lardaro took place on November 22, 2023. [R. at 35–59.] Plaintiff once again was represented by his attorney and provided testimony at that hearing. [R. at 39–55.] Susan Gaudet provided vocational expert testimony. [R. 55–58.] The ALJ issued her decision on February 20, 2024, once again finding that Plaintiff was not disabled under the Act. [R. at 14–34.] The Appeal Council denied Plaintiff's renewed request for review, rendering the ALJ's decision final. [R. at 1.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II.   LEGAL STANDARDS

### A.   The District Court's Standard of Review

The Act grants federal courts limited power to review the Commissioner's decision to deny an applicant disability benefits. 42 U.S.C. § 405(g). While courts conduct a plenary review of all legal issues the Commissioner decides, *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)), the Act requires courts to uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). This evidentiary threshold is "not high" and "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). It is a deferential standard, and a court cannot set aside the Commissioner's

decision merely because "acting *de novo* [it] might have reached a different conclusion." *See Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986). Indeed, courts cannot "weigh the evidence or substitute [its own] conclusions for those of the [Commissioner]." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (cleaned up).

The substantial evidence inquiry, while deferential, is not a perfunctory exercise to rubberstamp the Commissioner's decision. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining the substantial evidence standard is not "a talismanic or self-executing formula for adjudication," rather, the standard requires a "qualitative exercise"). Thus, when reviewing the Commissioner's decision, courts must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (internal quotation marks and citation omitted).

Where, as here, the Appeals Council denies a claimant's request for a review of an ALJ's decision, the "ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The ALJ's decision must have enough information to "permit meaningful judicial review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). This requires the ALJ to explain what evidence the judge considered that "supports the result" and "some indication of the evidence [the judge] rejected." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Otherwise, a reviewing court "cannot tell if significant probative evidence was not credited or simply ignored."

*Cotter*, 642 F.2d at 705.  A court will set aside an ALJ's decision if the judge failed to consider the entire record or resolve an evidentiary conflict.  *See Fargnoli v. Massanari*, 247 F.3d 34, 41–42 (3d Cir. 2001).

    **B.**    **Establishing Disability under the Social Security Act**

    Every qualifying individual who is under a "disability" is entitled to disability insurance benefits.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A).  "A claimant is considered unable to engage in any substantial activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'"  *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir. 1999) (quoting 42 U.S.C. § 423(d)(2)(A)); *accord* 42 U.S.C. § 1382c(a)(3)(B).  The burden of proving disability is on the claimant. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 174 (3d Cir. 2015) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a)).

    The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4).  The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id*. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" [*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ('RFC') and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id*. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02.

### III.  FACTUAL BACKGROUND

The Court recites herein only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff was 51 years old on his alleged onset date and 54 years old on his date last insured. [R. at 39.] He met the insured status requirements of the Act through December 31, 2020, meaning that he had to establish disability on or before that date to be entitled to benefits.

#### A.  Plaintiff's Educational and Work History

Plaintiff has a high school education. [R. at 39.] Prior to his alleged onset date, Plaintiff last worked as a commercial and industrial painter. [R. at 72, 355.] He was also previously employed as a warehouse worker. [R. at 83, 355.]

#### B.  Plaintiff's Medical History

Plaintiff suffers from the following physical and mental impairments: lumbar degenerative disc disease, migraine headaches, tremor/ataxia, cellulitis of the right axilla, right fifth digit laceration, traumatic hematoma of the right buttock, psoriasis, and emphysema. [R. at 20.]

The medical record establishes that Plaintiff reported to the emergency department after a fall in August 2017. [R. at 561.] Beginning in April 2019, Plaintiff was treated by neurology specialists with complaints of aphagia, ataxia, cerebrovascular small vessel disease, headaches, and psoriasis. [R. at 602–04.] In early October 2020, Plaintiff presented to the emergency department after experiencing difficulty with balance for several days. [R. at 506.] Medical records from later that month noted that Plaintiff was diagnosed with small vessel disease in

2012; he reported that the disease "causes his limbs and muscles to shut down . . . He sometimes [cannot] walk, move, write, or even speak clearly." [R. at 618.] Plaintiff reported constant headaches since 2012, impaired speech, issues with his motor skills, tremors, shaking, and trouble pressing buttons on his phone. [R. at 618.] The provider observed a tremor, chronic ataxia, chronic aphagia, and chronic headaches, and referred Plaintiff for a CT and to a neurologist for further evaluation. [R. at 619.]

On April 21, 2021, Plaintiff was examined by consultative examiner Dr. Karen Sciascia in connection with his migraine headaches, cerebral chronic small vessel disease, and concussion. [R. 628.] Dr. Sciascia observed bilateral nystagmus and both an intention and a resting tremor in his arms and hands, which made it difficult for Plaintiff to put on his shoes and socks. [R. 628–29.] She also observed an intention tremor in both legs, dizziness at times, and noted that Plaintiff had "very poor balance." [R. at 629–31.] Dr. Sciascia finally noted that "obviously he should not be climbing ladders [as he did in his prior work as a painter] with his dizziness and he does fall rather frequently." [R. at 633.]

On May 3, 2021, non-examining State agency review physician Dr. Darrin Campo opined, based on the records described above, that Plaintiff should be limited to light work due to his impairments and that his neurological disorders were severe. [R. at 95–99.]

Plaintiff testified before the ALJ that he has difficulty with balance and cannot write due to tremors in both hands that started in 2018. [R. at 43.] He further testified that during the relevant period he suffered from headaches twenty out of thirty days a

8

month and struggled walking on steps. [R. at 45, 51.] He described difficulty completing basic tasks like brushing his teeth, tying his shoes, combing his hair, typing on his phone, and drinking water without spilling. [R. at 46, 48–49, 53.]

## IV. THE ALJ'S DECISION

On remand, ALJ Lardaro found that Plaintiff was not disabled. At step one, the ALJ determined that Plaintiff had not engaged in gainful activity during the relevant period of May 1, 2018, through December 31, 2020. [R. at 20.] At step two, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments and, therefore, that he was not disabled. [R. at 23.] The ALJ noted that Plaintiff appeared to suffer from ataxia and migraine headaches, but that the medical record was insufficient to establish that any of these disorders either alone or in combination were severe prior to the date last insured. [R. at 23–28.] The ALJ's analysis stopped there.[2]

---

[2] The Court notes that the initial ALJ decision found that Plaintiff's chronic small vessel disease and chronic migraine headaches were severe impairments at step 2 and proceeded with the five-step analysis. [R. at 120.] That ALJ found that Plaintiff was not disabled at step five of the sequential analysis. [R. at 126–27.] This decision, however, was vacated by the Appeals Council in its entirety. [R. at 135–36.] "A vacated decision is officially gone, has no legal effect whatever, is void, and none of the statements made therein has any remaining force." *Lesh v. O'Malley*, 2024 WL 4270368, at *5 (M.D. Pa. Sept. 23, 2024) (cleaned up). The ALJ on remand was not required to consider any findings in the original ALJ decision because "they have been vacated and are 'officially gone.'" *Id.* Plaintiff contends that ALJ Lardaro was required to consider ALJ Eklund's findings, relying on *Mari on Behalf of Mari v. Kijakazi*, 2022 WL 4487986, at *9 (M.D. Pa. Sept. 27, 2022). But Plaintiff's reliance on *Mari* is misplaced. In *Mari*, the court found that the ALJ handling the claimant's second application for benefits was required to consider findings made by another ALJ in

The Appeals Council denied Plaintiff's request for review on October 24, 2024. [R. at 133–38.]  The ALJ's decision thus became final.  *See Chandler*, 667 F.3d at 359. Accordingly, on December 13, 2024, Plaintiff timely sought this Court's review pursuant to 42 U.S.C. § 405(g).  [Compl. (Docket No. 1).]

## V. DISCUSSION

On appeal, Plaintiff contends that the ALJ erred when she found that Plaintiff did not have any severe neurological or headache impairment, thereby ending the sequential analysis at step two, and requests that the Court vacate the ALJ's decision and remand the matter for further administrative proceedings.  The Court agrees.

At step two, "an impairment is not severe if it does not significantly limit [the applicant's] physical ability to do basic work activities."  *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  These are "the abilities and aptitudes necessary to do most jobs," such as walking, standing, sitting, carrying, handling, and speaking. 20 C.F.R. § 404.1522(b).

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  *Newell*, 347 F.3d at 546.  As such, "step two is to be rarely utilized as [the] basis for the denial of benefits" and "its invocation is certain to raise a judicial eyebrow."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004) (citing Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *4).  The applicant's burden at this

---

connection with the claimant's first application for benefits.  *Id.*  But, unlike here, that decision had not been vacated and was still part of the record before the judge.

10

step "is not an exacting one." *Id.* at 360. The "applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, 1985 WL 56856, at *3). Critically, "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant." *Id.* (citing *Newell*, 347 F.3d at 546–47).

The medical record before the ALJ and this Court establishes that Plaintiff suffered a history of falls [R. at 561], difficulty with balance and dizziness [R. at 506], tremors in his hands and all his limbs [R. at 618–19], as well as frequent prolonged headaches [R. at 602–04, 618–19] – all *prior to* Plaintiff's date last insured. The record includes both Plaintiff's subjective testimony, as well as clinical findings by his medical providers. Then, in April 2021, not even four months after the last date insured, a consultative examiner confirmed these impairments. [R. at 628–35.] While the ALJ recounted the medical evidence after the date last insured, her decision does not reflect whether she in fact considered this evidence in determining that Plaintiff's combination of impairments were not severe at step two, as required given its proximity to the date last insured. *See Newell*, 347 F.3d at 547 (permitting consideration of medical records beginning seven months after date last insured because "[r]etrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment."); *Lucent v. Comm'r of Soc. Sec.*, 2020 WL 2217269, at *6 (M.D. Pa. May 7, 2020) ("medical

11

evidence generated after the date last insured" is "relevant to the extent it is reasonably proximate in time or relates back to the period at issue."). Based on the ALJ's written decision, this Court cannot determine if this "evidence was not credited or simply ignored" because it post-dated Plaintiff's date last insured. *See Cotter*, 642 F.2d at 705. This alone is cause for remand.

Similarly, a non-examining state agency review physician opined just two weeks later that Plaintiff's impairments were severe. [R. at 95–99.] Plaintiff rightly takes issue with the ALJ's rejection of this physician's opinion. The ALJ stated that Dr. Campo's findings were not persuasive because they "are not supported by their evaluation of the medical evidence at the time the opinion was formed or consistent with other medical evidence of record as the totality of the medical evidence reveals that his alleged physical impairments were either not medically determinable or not severe for the reasons discussed above." [R. at 27–28.] The ALJ, however, failed to explain how the opinions were unsupported by and inconsistent with the record. Without an explanation, the Court cannot determine whether this finding is supported by substantial evidence, another cause for remand.

The ALJ also significantly discounted Plaintiff's subjective complaints about the severity of his symptoms in large part because of his sparse course of treatment. Yet the ALJ did not – as required – first consider Plaintiff's possible reasons for failing to follow up with specialists or seek frequent care. Plaintiff testified that at varying times he was on public assistance, Medicaid, and uninsured. [R. at 67–68.] Clearly, whether insured or not, Plaintiff experienced financial strain throughout the relevant

12

period and beyond. And, it goes without saying that even with insurance, out of pocket expenses can be prohibitively expensive. The ALJ erroneously did not consider this explanation prior to disregarding Plaintiff's testimony, also requiring remand. *See Newell*, 347 F.3d at 547–48 (reversing and remanding where ALJ discredited plaintiff's testimony due to lack of treatment despite her testimony that she could not afford care); *see also Young v. Berryhill*, 2018 WL 1256778, at *3 (W.D. Pa. Mar. 12, 2018) (noting that courts routinely remand cases where ALJs failed "to address evidence that a claimant declined or failed to pursue more aggressive treatment due to lack of medical insurance.") (collecting cases).

Finally, the medical evidence, as well as Plaintiff's corroborating testimony, establish impairments or a combination of impairments that unquestionably impacted his ability to work during the relevant period.[3] The question, however, is how significantly these impairments impacted his ability to work. This question is not for this Court to answer, but for the ALJ. The ALJ was required to "assess the impact of the combination of [Plaintiff's] impairments on [his] ability to function." SSR 85-28, 1985 WL 56856, at *3. This necessitates "an evaluation of the effect of the impairment(s) on the person's ability to do basic work activities," as well as "a careful

---

[3] For example, his balance difficulties, dizziness, and the tremors in his legs would have impacted his ability to climb ladders as required by his previous work, as well as the basic tasks of walking and standing. Likewise, the tremors in his arms and hands would have impacted his ability to carry and handle things. *See* 20 C.F.R. § 404.1522(b) (enumerating examples of "basic work activities").

13

evaluation of the medical findings which describe the impairment(s) *and* an informed judgment about [their] limiting effects on the individual's [ability] to perform basic work activities." *Id.* at *4. Yet the ALJ failed to undertake this careful evaluation. The ALJ did not provide any explanation for concluding that Plaintiff's impairments were so slight that they could not have more than a minimal effect on Plaintiff's ability to work. This, too, requires remand, especially given that any doubts as to whether Plaintiff has met his burden at step two must be resolved in his favor.[4] *See McCrea*, 370 F.3d at 360.

## VI.  CONCLUSION

For the reasons expressed above, the ALJ's decision is **VACATED**, and the case is **REMANDED** for further administrative proceedings consistent with this Opinion. An accompanying Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

Dated: December 23, 2025

---

[4] Since the ALJ did not proceed with the other steps in the sequential analysis, the errors identified by this Court are not harmless and require remand. *See Julieann H. v. O'Malley*, 2024 WL 511633, at *6 (D.N.J. Feb. 8, 2024); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007).